1
2
3
4
5

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

7

8   SEAN M. PARK; MICHELLE PARK,                    CASE NO. 10cv1546-WQH-WMc

9                                   Plaintiffs,     ORDER
            vs.
10  U.S. BANK NATIONAL
    ASSOCIATION; CREDIT SUISSE
11  FINANCIAL CORPORATION;
    QUALITY LOAN SERVICE
12  CORPORATION; OLD REPUBLIC
    TITLE COMPANY; SELECT
13  PORTFOLIO SERVICING;
    MORTGAGE ELECTRONIC
14  REGISTRATION SYSTEMS – "MERS";
    BILL KOCH in his official capacity as
15  assistant secretary to Mortgage Electronic
    Registration Systems and as document
16  control officer for Select Portfolio
    Servicing; LENDER PROCESSING
17  SERVICES, INC.; Auctioneer JAY
    GAFNER in his capacity as agent for
18  Lender Processing Services, Inc.;
    SUNDANCE LLC; DANIEL GROIS,
19  acting in his capacity as manager for
    Sundance LLC; and DOES individuals 1
20  to 100, inclusive; and ROES corporations
    1 to 30, inclusive; and all other persons
21  and entities unknown claiming any right,
    title, estate, lien, or interest in the real
22  property described in the complaint
    adverse to Plaintiffs' ownership, or any
23  cloud upon Plaintiffs' title thereto,

24                                 Defendants.

25  HAYES, Judge:

26          The matters before the Court are the Motions to Dismiss filed by Defendants Lender

27  Processing Services, Inc. ("Lender Processing Services"), U.S. Bank National Association

28  ("U.S. Bank"), Credit Suisse Financial Corporation ("Credit Suisse"), Select Portfolio

Servicing, and Mortgage Electronic Registration Systems (collectively, "moving Defendants"). (ECF Nos. 97, 100).

I.      **Background**

On May 4, 2011, Plaintiffs, proceeding pro se, filed the "First Amended Verified Complaint" ("First Amended Complaint"), which is the operative pleading.  (ECF No. 90). The First Amended Complaint alleges that, on August 15, 2007, Plaintiffs "entered into a contractual agreement ... borrowing $840,000 from lender Credit Suisse Financial Corporation refinancing the real property commonly known as 7421-7423 Draper Avenue, La Jolla, California...." *Id*. at 2. "The core of this action arises out of a breach of contractual agreement between Plaintiffs ... and lender Defendant Credit Suisse Financial Corporation, followed by an invalid and flawed non-judicial foreclosure on the subject property, and subsequent wrongful and invalid assignments recorded on Subject Property title." *Id*. at 2-3.  The First Amended Complaint alleges that "[a]ll ... named Defendants participated in improperly alleging an incorrect debt of $896,843.86 as owing on the subject property when Plaintiff only borrowed $840,000, and faithfully performed all the required covenants of the Subject Loan Agreement making well over $100,100 in timely payments until ... Defendants instructed and advised Plaintiffs to stop making monthly payments." *Id*. at 3.  The First Amended Complaint alleges that the "foreclosing Notice of Trustee Sale, was recorded by unauthorized party Defendant Quality Loan Service," and "Defendant Jay Gafner, as auctioneer and an unidentified 'highest bidder' acted wrongfully as agents for Defendants in proceeding with the public auction sale after being put on constructive notice of a fraudulent sale transaction by Plaintiff Sean Park." *Id*.

The First Amended Complaint alleges seventeen causes of action against all Defendants: (1) violation of the Truth in Lending Act ("TILA"); (2) violation of California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"); (3) violation of the Fair Debt Collection Practices Act ("FDCPA"); (4) wrongful foreclosure; (5) violation of the Real Estate Settlement Procedures Act ("RESPA"); (6) breach of fiduciary duty; (7) fraud – intentional misrepresentation; (8) fraud – negligent misrepresentation; (9) violations of California

Business and Professions Code § 17200; (10) breach of contract – promissory estoppel; (11) breach of the implied covenant of good faith and fair dealing; (12) conversion; (13) violation of California Civil Code § 2923.5; (14) quiet title; (15) injunctive relief; (16) rescission; and (17) accounting.   The First Amended Complaint alleges federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.   Plaintiffs seek damages, injunctive relief and declaratory relief.

On May 24, 2011, Defendants Sundance LLC and Daniel Grois filed an Answer to the First Amended Complaint.  (ECF No. 96).

On May 26, 2011 and May 27, 2011, the moving Defendants filed the Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and a Request for Judicial Notice.  (ECF Nos. 97, 100).

On June 22, 2011, Plaintiffs filed oppositions to the Motions to Dismiss.  (ECF Nos. 102, 103, 104).   Plaintiffs contend that the Motions to Dismiss should be denied, or alternatively, that Plaintiffs should be granted leave to amend the First Amended Complaint.

On June 28, 2011, the moving Defendants filed reply briefs.  (ECF Nos. 105, 106).

## II.    Discussion

### A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To sufficiently state a claim to relief and survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).  When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations."  *Ashcroft v. Iqbal*,

--- U.S. ----, 129 S. Ct. 1937, 1950 (2009).  However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).  "Courts have a duty to construe pro se pleadings liberally." *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003) (citation omitted).

### B.   Request for Judicial Notice

"A district court ruling on a motion to dismiss may consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998) (quotation omitted).  Also, "a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies." *Id.* at 706.

The moving Defendants request that the Court take judicial notice of the documents executed by Plaintiff and relating to the property at issue, including the Deed of Trust, the Notice of Default, the Notice of Trustee's Sale, the Corporate Assignment of Deed of Trust, and the Trustee's Deed Upon Sale.  (ECF No. 100-1).  Plaintiffs do not oppose the Request for Judicial Notice.

The First Amended Complaint either references or necessarily relies upon each of the documents which are attached to the Request for Judicial Notice.  The authenticity of the documents has not been challenged.  Accordingly, the Request for Judicial Notice is granted.

### C.   Motions to Dismiss

Plaintiffs allege each of the seventeen causes of action against each of the Defendants.  Each of the moving Defendants move for the dismissal of each cause of action.

#### 1.   TILA

Plaintiffs allege that Defendants violated TILA, 15 U.S.C. §§ 1601, *et seq.*, and seek

1   damages, and "rescission of the Subject Loan [and] an order requiring Defendants ... to

2   terminate any security interest in the Subject Property."  (ECF No. 90 at 19).

3       The moving Defendants move for the dismissal of the TILA claim for damages on the

4   basis that the statute of limitations has expired.  The moving Defendants move for the

5   dismissal of the TILA claim for rescission on the basis that Plaintiffs have failed to adequately

6   allege tender.[1]

7                   **a.      TILA Claim for Damages**

8       Damages claims under TILA must be brought "within one year from the date of the

9   occurrence of the violation."  15 U.S.C. § 1640(e).  "[A]s a general rule the limitations period

10  starts at the consummation of the transaction."  *King v. California,* 784 F.2d 910, 915 (9th Cir.

11  1986).  "[E]quitable tolling may be applied if, despite all due diligence, a plaintiff is unable

12  to obtain vital information bearing on the existence of his claim."  *Santa Maria v. Pacific Bell*,

13  202 F.3d 1170, 1178 (9th Cir. 2000) (citation omitted).  Generally, a litigant seeking equitable

14  tolling of a limitations period bears the burden of establishing entitlement to equitable tolling.

15  *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005).  Where a plaintiff alleges TILA violations

16  during initial disclosures, equitable tolling is not appropriate if "nothing prevented [plaintiff]

17  from comparing the loan contract, [the] initial disclosures, and TILA's statutory and regulatory

18  requirements."  *Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75, 70 (9th Cir. 1996) (citing *King*,

19  784 F.2d at 915).

20      The First Amended Complaint alleges that Plaintiffs obtained the loan on August 15,

21  2007.  Plaintiffs filed this lawsuit on July 26, 2010, nearly three years after the loan transaction

22  was consummated.  Accordingly, Plaintiffs' TILA claim for damages is barred by the one-year

23  statute of limitations, unless equitable tolling applies.  In their opposition brief, Plaintiffs state

24  that "[t]he statute of limitations to recover Plaintiffs' damages under TILA may be equitably

25  tolled."  (ECF No. 103 at 17).  However, the First Amended Complaint does not adequately

26  allege facts indicating that, "despite all due diligence, [Plaintiffs were] unable to obtain vital

27

28          [1]   The moving Defendants move for the dismissal of all claims in the First Amended
    Complaint seeking an equitable remedy on the basis of Plaintiffs' failure to adequately allege
    tender.  The Court will address each claim as it is alleged in the First Amended Complaint.

1    information bearing on the existence of [their] claim."   *Santa Maria*, 202 F.3d at 1178.

2    Because Plaintiffs fail to adequately allege the availability of equitable tolling, Plaintiffs' claim

3    for damages pursuant to TILA is barred by the statute of limitations.

4                    **b.    TILA Claim for Rescission**

5                In order to ultimately prevail on a TILA rescission claim, the borrower will be obligated

6    to tender the property the borrower received from the creditor under the loan.   *See* 15 U.S.C.

7    § 1635(b); 12 C.F.R. § 226.23(d); *cf. Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1173 (9th Cir.

8    2003) (holding that "courts [are] free to exercise equitable discretion to modify rescission

9    procedures.").   "By far, the majority of Courts to address the issue recently have required that

10   borrowers allege an ability to tender the principal balance of the subject loan in order to state

11   a claim for rescission under TILA."   *Garcia v. Wachovia Mortg. Corp.*, 676 F. Supp. 2d 895,

12   901 (2009) (collecting cases).   This rule is in recognition of the principle that "[e]quity will not

13   interpose its remedial power in the accomplishment of what seemingly would be nothing but

14   an idly and expensively futile act, nor will it purposely speculate in a field where there has

15   been no proof as to what beneficial purpose may be subserved through its intervention."

16   *Karlsen v. Am. Sav. & Loan Ass'n*, 15 Cal. App. 3d 112, 118 (1971) (quotation omitted); *see

17   also Garza v. Am. Home Mortg.*, No. CV 08-1477, 2009 WL 188604, at *5 (E.D. Cal. Jan. 27,

18   2009) ("The complaint fails to hint that [plaintiff] is able to fulfill her [tender] obligations

19   under 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.23(d).   Rescission is an empty remedy without

20   [plaintiff's] ability to pay back what she has received.").

21               Plaintiffs allege that the loan amount was $840,000.   Plaintiffs allege: "As soon as

22   Defendants meet their required obligations, ... Plaintiffs are ready and able to tender whatever

23   remaining mortgage debt has been judicially determined.   If for any reason Plaintiffs cannot

24   tender the full amount due, Plaintiffs have several qualified buyers ready to submit letters of

25   intent to this ... Court."   (ECF No. 90 at 19).

26               Plaintiffs do not allege any specific facts related to the "qualified buyers."   Plaintiffs

27   do not otherwise allege specific facts as to how Plaintiffs would be able to able to tender the

28   loan proceeds.   Even construing the First Amended Complaint liberally, the Court finds that

1   Plaintiffs' allegations are insufficient to plausibly show an ability to tender.  *See Iqbal*, 129 S.

2   Ct. at 1950.

3       The Motions to Dismiss are granted as to the first cause of action for violation of TILA.

4          **2.**      **Fair Debt Collection Practices Acts**

5       The second and third causes of action allege violations of the FDCPA, 15 U.S.C. §§

6   1692, *et seq*., and the RFDCPA, Cal. Civ.Code § 1788, *et seq.*

7       The moving Defendants move for the dismissal of the FDCPA and RFDCPA claims on

8   the basis that "foreclosing on a Deed of Trust does not invoke the statutory protections" of the

9   FDCPA and RFDCPA.  (ECF No. 100 at 16).

10       The FDCPA and RFDCPA prohibit debt collectors from engaging in abusive, deceptive

11   and unfair practices in the collection of consumer debts.  *See* 15 U.S.C. § 1692; Cal. Civ. Code

12   § 1788.1.  A defendant must be a "debt collector" to be liable pursuant to the FDCPA and the

13   RFDCPA.  *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995); *see also* Cal. Civ. Code § 1788.2(c).

14    "The legislative history of section 1692a(6) indicates conclusively that debt collector does not

15   include ... a mortgage servicing company, or an assignee of a debt, as long as the debt was not

16   in default at the time it was assigned."  *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th

17   Cir. 1985).

18       The FDCPA and RFDCPA do not apply to foreclosure activities.  *See Walker v. Equity*

19   *1 Lenders Group*, Case No. 09cv325 WQH (AJB), 2009 WL 1364430 at *7 (S.D. Cal. May

20   14, 2009) ("The activity of foreclosing on [a] property pursuant to a deed of trust is not the

21   collection of a debt within the meaning of the FDCPA or the RFDCPA.") (quotation omitted);

22   *Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1054-55 (E.D. Cal.

23   2009) ("Foreclosure on a property as security on a debt is not debt collection activity

24   encompassed by the Rosenthal Act."); *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188,

25   1204 (D. Or. 2002) ("Foreclosing on a trust deed is distinct from the collection of the

26   obligation to pay money.  The FDCPA is intended to curtail objectionable acts occurring in the

27   process of collecting funds from a debtor....  Payment of funds is not the object of the

28   foreclosure action.  Rather, the lender is foreclosing its interest in the property."); *but see*

*Austero v. Aurora Loan Servs., Inc.*, Case No. C-11-490, 2011 WL 1585530, at *9 (N.D. Cal Apr. 27, 2011) (holding that "[w]here the claim arises out of debt collection activities beyond the scope of the ordinary foreclosure process, however, a remedy may be available under the Rosenthal Act") (quotation omitted).

The First Amended Complaint alleges:

> Defendants' actions constitute a violation of the [RFDCPA], in that they took and threatened to take actions prohibited by law, including, without limitation: an illegal auction falsely stating the amount of the debt; increasing the amount of the debt by including amounts not permitted by law or contract; improperly foreclosing on the Subject Property; and using unfair and unconscionable means in an attempt to collect a debt.

(ECF No. 90 at 21-22; *see also id.* at 24 (same, with respect to FDCPA)).

To the extent the First Amended Complaint alleges violations of the FDCPA and RFDCPA related to the ordinary foreclosure process, the acts do not apply because the allegations are not related to collection activities. To the extent Plaintiffs allege Defendants acted outside of the scope of the ordinary foreclosure process, the First Amended Complaint fails to adequately allege how each Defendant constitutes a debt collector pursuant to the acts, and how each Defendant violated the acts. *See Iqbal*, 129 S. Ct. at 1950.

The Motions to Dismiss are granted as to the second and third causes of action for violations of the FDCPA and RFDCPA.

### 3.     Wrongful Foreclosure

Wrongful foreclosure is an action in equity, where a plaintiff seeks to set aside a foreclosure sale. *See Abdallah v. United Sav. Bank*, 43 Cal. App. 4th 1101, 1009 (1996); *Karlsen*, 15 Cal. App. 3d at 117. Under California law, "[w]hen a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of action for wrongful foreclosure." *Alicea v. GE Money Bank*, No. C-09-91, 2009 WL 2136969, at *3 (N.D. Cal. July 16, 2009). "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen*, 15 Cal. App. 3d at 117-18; *see also FPCI RE-HAB 01 v. E&G Invs., Ltd.*, 207 Cal. App. 3d 1018, 1021 (1989) (same). "A valid and viable offer of tender means that it is made in good faith, the

- 8 -

party making the tender has the ability to perform, and the tender must be unconditional." *Alicea*, 2009 WL 2136969, at *3 (citation omitted).

As discussed above, the allegations in the First Amended Complaint are insufficient to plausibly show an ability and willingness to tender. *See Iqbal*, 129 S. Ct. at 1950.

The Motions to Dismiss are granted as to the fourth cause of action for wrongful foreclosure.

### 4.   RESPA

The fifth cause of action of the First Amended Complaint alleges that "Defendants violated RESPA at the time of closing of the Loan Agreement by failing to properly and accurately comply with disclosure requirements in that ... Defendants did not provide a Servicing Statement as set forth in 12 U.S.C. § 2605(a); ... and did not properly respond to a Qualified Written Request as set forth in 12 U.S.C. § 2605(e)...." (ECF No. 90 at 28).

The moving Defendants move to dismiss the claim for violation of RESPA on the basis that any claims originating at the time of the loan transaction are barred by the statute of limitations, and otherwise "Plaintiffs have ... failed to allege any actual damages they have sustained, or improper fees they have incurred, as a result of any RESPA violations." (ECF No. 100 at 20).

### a.   Statute of Limitations

Violations of RESPA section 2605 are subject to a one-year statute of limitations. *See* 12 U.S.C. § 2614. The RESPA statute of limitations runs "from the date of the occurrence of the violation." *Id.* Apart from Plaintiffs' allegations related to the failure to respond to a Qualified Written Request (addressed below), Plaintiffs' RESPA claim appears to be based on allegations of failure to disclose information "at the time of closing of the Loan Agreement" on August 15, 2007. (ECF No. 90 at 28). Plaintiffs filed this lawsuit on July 26, 2010, nearly three years after the closing of the loan transaction. As discussed above, Plaintiffs fail to allege facts which would support equitable tolling of the statute of limitations. Accordingly, Plaintiffs' claim for violations of RESPA related to nondisclosure at the time of the loan transaction is barred by the statute of limitations.

1

### b.   Qualified Written Request

2     Section 2605 of RESPA requires that "[i]f any servicer of a federally related mortgage

3  loan receives a qualified written request from the borrower (or an agent of the borrower) for

4  information relating to the servicing of such loan, the servicer shall provide a written response

5  acknowledging receipt of the correspondence within 20 days ... unless the action requested is

6  taken within such period."  12 U.S.C. § 2605(e)(1)(A); *see also* 12 U.S.C. § 2605(e)(2)

7  (describing the action required to be taken in response to a qualified written request).  If a loan

8  servicer fails to comply with the provisions of § 2605, a borrower shall be entitled to "any

9  actual damages to the borrower as a result of the failure" and "any additional damages, as the

10  court may allow, in the case of a pattern or practice of noncompliance with the requirements

11  of [§ 2605]."  12 U.S.C. § 2605(f)(1).

12     Plaintiffs allege that they sent a Qualified Written Request to Defendant Select Portfolio

13  Servicing on May 13, 2010, and Defendants "did not properly respond."  (ECF No. 90 at 28;

14  *see also id.* at 92).  The moving Defendants move to dismiss on the basis that Plaintiffs failed

15  to adequately allege damages.

16

### i.   Actual Damages

17     "Numerous courts have read Section 2605 as requiring a showing of pecuniary damages

18  to state a claim."  *Molina v. Wash. Mut. Bank*, No. 09cv894, 2010 WL 431439, at *7 (S.D. Cal.

19  Jan. 29, 2010) (collecting cases).  "This pleading requirement has the effect of limiting the

20  cause of action to circumstances in which plaintiff can show that a failure to respond or give

21  notice has caused them actual harm."  *Shepherd v. Am. Home Mortg. Servs., Inc.*, No. 09-1916,

22  2009 WL 4505925, at *3 (E.D. Cal. Nov. 20, 2009) (citation omitted); *cf. Yulaeva v.*

23  *Greenpoint Mortg. Funding, Inc.*, No. 09-1504, 2009 WL 2880393, at *15 (E.D. Cal. Sept. 9,

24  2009) (plaintiff sufficiently pled actual damages where plaintiff alleged she was required to

25  pay a specific referral fee prohibited under RESPA).

26     The First Amended Complaint alleges:

27     Defendants' failure to comply with RESPA has directly and proximately caused
      Plaintiffs to suffer actual damages including, without limitation: monetary loss,
28     loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety,
      sleeplessness, sadness and depression and other significant emotional suffering

and distress, loss of ability to refinance other property due to loss of previously outstanding credit, loss of business opportunities due to damage in contractual relationships with Plaintiffs' tenants, out of pocket costs of legal research, audit and other professional fees, court costs, and future damages....

(ECF No. 90 at 29).

Even construing the First Amended Complaint liberally, Plaintiffs fail to plead non-conclusory factual allegations indicating how they were damaged by the alleged failure to properly respond to the Qualified Written Request. *Cf. Allen v. United Fin. Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009) ("Allen only offers the conclusory statement that 'damages consist of the loss of plaintiff's home together with his attorney fees.' He has not actually attempted to show that the alleged RESPA violations caused any kind of pecuniary loss (indeed, his loss of property appears to have been caused by his default)."). Plaintiffs fail to allege how the failure of the Defendants to comply with RESPA, as opposed to Plaintiffs' default or the other alleged actions of Defendants, plausibly caused the damages alleged in the First Amended Complaint. *Cf. Lawther v. OneWest Bank*, No. C-10-54, 2010 WL 4936797, at *7 (N.D. Cal. Nov. 30, 2010) (granting motion to dismiss RESPA claim for failure to adequately allege actual damages because "[w]hat remains unexplained ... is how the QWR failure itself is causally connected to the claimed distress of Lawther or his family"); *Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) ("[S]imply having to file suit [does not] suffice as a harm warranting actual damages. If such were the case, every RESPA suit would inherently have a claim for damages built in."). Plaintiffs fail to allege how the failure to respond to the Qualified Written Request caused the reduction in their credit rating and the "loss of ability to refinance other property." ECF No. 90 at 28. The Court finds that Plaintiffs' RESPA claim for actual damages for failure to respond to the Qualified Written Request is inadequately pled. *See Iqbal*, 129 S. Ct. at 1950.

### ii.   Statutory Damages

To recover statutory damages, a plaintiff must plead a pattern or practice of noncompliance with RESPA. *See* 12 U.S.C. § 2605(f)(1)(b).

The First Amended Complaint alleges that Plaintiffs are entitled to statutory and punitive damages because Select Portfolio Servicing has "engaged in a pattern or practice of

non-compliance" with RESPA. (ECF No. 90 at 29). "For the purpose of establishing and supporting" this allegation, Plaintiffs attach to the First Amended Complaint a press release from the Federal Trade Commission dated November 12, 2003. *Id.* The press release concerns settlements reached by the Federal Trade Commission and the U.S. Department of Housing and Urban Development with Fairbanks Holding Corporation, Fairbanks Capital Corporation, and their former CEO, Thomas D. Basmajian, for alleged violations of RESPA and other statutes. *See id.* at 121-24. Plaintiffs appear to contend that Select Portfolio Servicing has a relationship to the parties discussed in the press release, but Plaintiffs fail to adequately allege the nature of the relationship, and why the alleged RESPA violations of Fairbanks Holding Corporation and Fairbanks Capital Corporation should be imputed to Select Portfolio Servicing. The Court finds that the allegations of a pattern or practice of noncompliance with RESPA are conclusory, and do not plausibly show a pattern and practice of RESPA violations by Select Portfolio Servicing or the other Defendants in this action. *See Iqbal*, 129 S. Ct. at 1950; *cf. Lal*, 680 F. Supp. 2d at 1223 (RESPA claim deficient because "Plaintiffs flatly claim a pattern of noncompliance but state no facts other than the assurance that at trial they will present other customers who also did not receive QWR responses from Defendant."); *Garvey v. Am. Home Mortg. Servicing, Inc.*, No. CV-09-973, 2009 WL 2782128, at *2 (D. Ariz. Aug. 31, 2009) (same). The Court finds that Plaintiffs' RESPA claim for statutory damages is inadequately pled.

The Motions to Dismiss are granted as to the fifth cause of action for violation of RESPA.[2]

### 5.        Breach of Fiduciary Duty

The moving Defendants move for the dismissal of the sixth cause of action for breach of fiduciary duty on the basis that the moving Defendants did not have a fiduciary relationship with Plaintiffs.

---

[2] The Court has dismissed all federal law claims as to the moving Defendants. At this stage in the proceedings, the Court will exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because this case will proceed on the federal law claims against other Defendants, *see* ECF No. 96.

"The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." *Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1086 (1995). Under California law:

> Absent special circumstances a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and lender. A commercial lender pursues its own economic interests in lending money. A lender owes no duty of care to the borrowers in approving their loan. A lender is under no duty to determine the borrower's ability to repay the loan. The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's.

*Perlas v. GMAC Mortg., LLC*, 187 Cal. App. 4th 429, 436 (2010) (quotations and citations omitted); *see also Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-96 (1991) ("As a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."). A lender does not have a duty to procure a loan modification for a borrower. *See Dooms v. Fed. Home Loan Mortg. Corp.,* Case No. 11-cv-352, 2011 WL 1303272 at *9 (E.D. Cal. Mar. 31, 2011); *Curtis v. Option One Mortg. Corp.*, Case No. 09-cv-1608, 2010 WL 599816 at *12 (E.D. Cal. Feb. 18, 2010).

The First Amended Complaint alleges generally that, "all Defendants owed a duty of loyalty and a duty to deal fairly with Plaintiffs at all times." (ECF No. 90 at 31). The First Amended Complaint fails to adequately allege any "special circumstances" that establish a fiduciary relationship between Plaintiffs and each Defendant. *Perlas*, 187 Cal. App. 4th at 436. The Court finds that Plaintiffs' claim for breach of fiduciary duty is inadequately pled.

The Motions to Dismiss are granted as to the sixth cause of action for breach of fiduciary duty.

### 6.    Fraud

The moving Defendants move for the dismissal of the seventh and eighth causes of action for "fraud – intentional misrepresentation" and "fraud – negligent misrepresentation,"

1    ECF No. 90 at 32, 34, on the basis that the claims are inadequately pled.[3]

2         "To establish a claim for fraudulent misrepresentation, the plaintiff must prove: (1) the

3    defendant represented to the plaintiff that an important fact was true; (2) that representation

4    was false; (3) the defendant knew that the representation was false when the defendant made

5    it, or the defendant made the representation recklessly and without regard for its truth; (4) the

6    defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably

7    relied on the representation; (6) the plaintiff was harmed; and, (7) the plaintiff's reliance on

8    the defendant's representation was a substantial factor in causing that harm to the plaintiff."

9    *Perlas*, 187 Cal. App. 4th at 434 (citation omitted).   The elements of a negligent

10   misrepresentation claim are: "(1) a misrepresentation of a past or existing material fact, (2)

11   without reasonable ground for believing it to be true, (3) with the intent to induce another's

12   reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5)

13   resulting damages."  *Nat'l Union Fire Ins. Co. v. Cambridge Integrated Servs. Group, Inc.*,

14   171 Cal. App. 4th 35, 50 (2009).  "It is well-established in the Ninth Circuit that both claims

15   for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirement."

16   *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (citation

17   omitted).   Pursuant to Rule 9(b), "in alleging fraud or mistake, a party must state with

18   particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Rule 9(b)

19   does not allow a complaint to merely lump multiple defendants together but "require[s]

20   plaintiffs to differentiate their allegations when suing more than one defendant ... and inform

21   each defendant separately of the allegations surrounding his alleged participation in the fraud."

22   *Swartz v. KPMG LLP,* 476 F.3d 756, 764-65 (9th Cir. 2007).  "[T]he plaintiffs must, at a

23   minimum, identify the role of each defendant in the alleged fraudulent scheme."  *Id.*; *see also*

24   *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) ("While

25   _____

26      [3]  The moving Defendants also contend that the Court should "disregard" the fraud
     allegations in the First Amended Complaint as "merely a sham" because "Plaintiffs' original
27   Complaint alleged fraud in connection with the loan's origination," but "Plaintiffs now have
     changed their tune" and alleged fraud after loan origination. (ECF No. 100 at 22).  In support
28   of this contention, Defendants rely upon *Lee v. Hensley*, 103 Cal. App. 2d 697, 708-09 (1951).
     The Court does not find that application of this California pleading rule is appropriate in this
     case.

statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere

conclusory allegations of fraud are insufficient.").

The First Amended Complaint alleges:

At 10am on June 30, 2009, Plaintiffs called 888-818-6032 and spoke with [Select Portfolio Servicing] agent Brandon Overstreet who instructed Plaintiffs that they must stop making monthly payments and allow the subject property to go into default in order to qualify for a lower monthly payment.

Plaintiffs ... justifiably relied on SPS agent Brandon Overstreet['s] representations which were material to Plaintiffs' decision to refrain from selling or arranging refinancing of the subject property, and to cease making payments in connection with the Subject Loan, and Defendants knew these representations were false.

Defendants and their agent Brandon Overstreet made the representations to Plaintiffs with knowledge of the falsity and with reckless disregard for their truth or falsity.

Defendants and their agent Brandon Overstreet made the representations to Plaintiffs with the knowledge and intent that Plaintiffs would rely on the representations and with the intent to deceive Plaintiffs ... and to wrongfully induce Plaintiffs into relying on a future permanently modified loan contract.

In reasonable and justifiable reliance on Defendants' and their agents' representations, ... Plaintiffs were induced to their detriment to believe the subject property was secure and any prospective foreclosure had been indefinitely postponed and the subject property was not subject to sale by non-judicial foreclosure.

But for Defendants' representations, Plaintiffs would have sold or refinanced the subject property to recover their equity before the sale....

Defendants' above mentioned fraudulent misrepresentation ... has directly and proximately caused Plaintiffs to suffer actual damages....

(ECF No. 90 at 32-33; *see also id*. at 34-35 (same, with respect to cause of action for negligent

misrepresentation)).

Viewing these allegations liberally, the Court finds that the First Amended Complaint

adequately alleges causes of action for intentional and negligent misrepresentation against

Defendant Select Portfolio Servicing. The First Amended Complaint specifically identifies

the identity of the Select Portfolio Servicing agent who made the alleged misrepresentation and

the date and time when the alleged misrepresentation was made. The First Amended

Complaint adequately alleges the contents of the alleged misrepresentation, and adequately

alleges the remaining elements of the intentional and negligent misrepresentation causes of

action as to Select Portfolio Servicing.

The Court finds that the First Amended Complaint fails to adequately allege causes of action for intentional and negligent misrepresentation as to the remainder of the moving Defendants.  The First Amended Complaint fails to "inform each [remaining] defendant separately of the allegations surrounding his alleged participation in the fraud," and fails to "identify the role of each [remaining] defendant in the alleged fraudulent scheme."  *Swartz,* 476 F.3d at 764-65.

The Motion to Dismiss is denied as to the claims for intentional and negligent misrepresentation against Select Portfolio Servicing.  The Motions to Dismiss are granted as to the claims for intentional and negligent misrepresentation against all other moving Defendants.

### 7.      Breach of Contract – Promissory Estoppel

In the tenth cause of action for "breach of contract – promissory estoppel," the First Amended Complaint alleges:

> Plaintiffs fully and faithfully performed all of the covenants, terms, conditions, and obligations required under the permanently modified mortgage loan agreement for the Subject property on their part to be performed, as alleged in the previous paragraphs of Plaintiffs' complaint.  Defendants unexpectedly rejected their earlier agreement to permanently modify the subject loan contract and proceeded with a wrongful and unwarranted foreclosure sale.
>
> The doctrine of promissory estoppel makes Defendants' ... promise to modify the subject loan agreement if Plaintiffs voluntarily entered a default on the subject loan agreement binding under the circumstances.

(ECF No. 90 at 37).

The moving Defendants move to dismiss this cause of action on the following two grounds: "[B]ecause Plaintiffs have not alleged the purported modification agreement was reduced to a writing, it fails to satisfy the Statute of Frauds and, as a result, is not binding on either party.  Plaintiffs also do not provide any facts to suggest that they performed their obligations under the purported modification agreement (or that they were excused from doing so)."  (ECF No. 100 at 24-25).

Mortgages and deeds of trust are subject to the statute of frauds.  *See* Cal. Civ. Code § 2922.  "An agreement to modify a contract that is subject to the statute of frauds is also subject

to the statute of frauds." *Seacrest v. Security Nat'l Mortg. Loan Trust 2002-2*, 167 Cal. App. 4th 544, 553 (2008) (citing Cal. Civ. Code § 1698).   To the extent Plaintiffs' tenth cause of action alleges a claim for breach of contract, the claim as pled is barred by the statute of frauds. *See id.* at 547 (holding that a mortgage loan forbearance agreement was barred by the statute of frauds).   The Motions to Dismiss are granted as to the tenth cause of action, to the extent it alleges a claim for breach of contract.

In the tenth cause of action, Plaintiffs also purport to state a claim for promissory estoppel.   To the extent Plaintiffs allege a promissory estoppel claim, the Court finds that it is inappropriate to dismiss the claim at this stage on the basis of the statute of frauds. *See Garcia v. World Sav., FSB*, 183 Cal. App. 4th 1031, 1041 n.10 (2010) (denying motion for summary judgment on borrower's promissory estoppel claim related to an alleged promise to delay foreclosure and holding that "to the extent [plaintiffs]' claim is premised on promissory estoppel, neither section 1698 nor the statute of frauds will defeat their claim").

Defendants also move to dismiss on the basis that "Plaintiffs ... do not provide any facts to suggest that they performed their obligations under the purported modification agreement (or that they were excused from doing so)."  (ECF No. 100 at 24-25).   To the extent Plaintiffs allege a promissory estoppel claim, it is not necessary for Plaintiffs to allege that Plaintiffs performed–or even had–any obligations to Defendants.   *See Garcia*, 183 Cal. App. 4th at 1040-41 ("The absence of consideration or benefit to the promisor does not, however, defeat a claim based on promissory estoppel.  The doctrine of promissory estoppel makes a promise binding under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange.") (quotation omitted).   The Court finds that it is inappropriate to dismiss the promissory estoppel claim because "Plaintiffs ... do not provide any facts to suggest that they performed their obligations under the purported modification agreement (or that they were excused from doing so)."  (ECF No. 100 at 24-25).

The only specific promises alleged to have been made in the First Amended Complaint are alleged to have been made by representatives of Defendant Select Portfolio Servicing. *See* ECF No. 90 at 10-11 (alleging promises made related to loan modification by Select Portfolio

1   Servicing agents Brandon Overstreet and Miguel Gonzales).   Because Plaintiffs fail to

2   adequately allege that any other Defendant made promises to Plaintiffs, the Motions to Dismiss

3   are granted as to the promissory estoppel claim against all moving Defendants other than

4   Select Portfolio Servicing.

5         In its Motion to Dismiss, Select Portfolio Servicing does not address the promissory

6   estoppel claim in the tenth cause of action, and does not contend that any specific element of

7   the promissory estoppel claim is inadequately pled.   *See* ECF No. 100 at 24-25.   Accordingly,

8   the Court does not decide whether the promissory estoppel claim is adequately pled.   The

9   Court finds that the two grounds on which Select Portfolio Servicing challenged the tenth

10  cause of action does not merit dismissal of the promissory estoppel claim.   Accordingly, the

11  Motion to Dismiss is denied as to the promissory estoppel claim against Select Portfolio

12  Servicing.

13         **8.        Breach of the Implied Covenant of Good Faith and Fair Dealing**

14        The moving Defendants move to dismiss the eleventh cause of action for breach of the

15  covenant of good faith and fair dealing on the basis that "Plaintiffs must show a special

16  relationship between themselves and the lender," and "as a matter of law, there is no fiduciary

17  relationship between a lender and borrower."   (ECF No. 100 at 25-26).

18        "Generally, no cause of action for the tortious breach of the implied covenant of good

19  faith and fair dealing can arise unless the parties are in a special relationship with fiduciary

20  characteristics."   *Pension Trust Fund v. Fed. Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002)

21  (applying California law).   "[T]he implied covenant tort is not available to parties of an

22  ordinary commercial transaction where the parties deal at arms' length."   *Id*. (citation omitted).

23  California courts do not invoke a special relationship between a lender and borrower.   *See Kim*

24  *v. Sumitomo Bank*, 17 Cal. App. 4th 974, 979 (1993) ("the relationship of a bank-commercial

25  borrower does not constitute a special relationship for the purposes of the covenant of good

26  faith and fair dealing"); *Mitsui Mfrs. Bank v. Superior Court*, 212 Cal. App. 3d 726, 729

27  (1989) (borrower precluded to assert tortious breach of implied covenant of good faith and fair

28  dealing claim against lender).   An exception to this general rule may exist if "the financial

1    dependence or personal security by the damaged party has been entrusted to the other" or

2    "when [the lender] excessively controls or dominates the borrower." *Pension Trust Fund*, 307

3    F.3d at 955 (citations omitted).

4         The First Amended Complaint alleges that Plaintiffs were "full time landlords" who

5    own "several income generating properties," and leased to subject property to tenants.  (ECF

6    No. 90 at 16).  Although Plaintiffs allege that they have been damaged by Defendants' actions,

7    the First Amended Complaint fails to adequately allege that Plaintiffs' "financial dependence

8    or personal security ... has been entrusted to" Defendants or that Defendants "excessively

9    control[] or dominate[]" Plaintiffs.  *Pension Trust Fund*, 307 F.3d at 955.  The Court finds that

10   the First Amended Complaint fails to adequately allege that Plaintiffs and any Defendant "are

11   in a special relationship with fiduciary characteristics."  *Id*.  Accordingly, the Motions to

12   Dismiss are granted as to the eleventh cause of action for breach of the covenant of good faith

13   and fair dealing.

14             **9.    Conversion**

15        The moving Defendants move to dismiss the twelfth cause of action for conversion

16   because it "fails to state a valid cause of action"; "[c]onversion does not apply to real

17   property"; and "Plaintiffs have no standing to allege conversion, where, as here, Plaintiffs do

18   not allege that they have actual possession of the property (securities instruments) or the right

19   to immediate possession at the time of the conversion."  (ECF No. 100 at 26-27).

20        The First Amended Complaint alleges that "the subject property promissory note" was

21   purchased by investors "who illegally converted Plaintiffs' note ... into unregistered securities,

22   and illegally sold the rights and interest in those unregistered securities to investors all over

23   the world as certificates, all without Plaintiffs' informed consent as drawer ... of the note, in

24   violation of 15 U.S.C. section 77 *et seq*."  (ECF No. 90 at 41).

25        In the twelfth cause of action, Plaintiffs appear to be alleging a claim related to the

26   unlawful sale of unregistered securities in violation of federal law.  In general, 15 U.S.C. § 77e

27   makes it unlawful to sell unregistered securities.  The elements of a § 77e claim are "(1) lack

28   of a registration statement as to the subject securities; (2) the offer or sale of the securities; and

1   (3) the use of interstate transportation or communication and the mails in connection with the

2   offer or sale." *Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147

3   F.3d 118, 124 n.4 (2d Cir. 1998). The Court finds that the First Amended Complaint fails to

4   plausibly allege a cause of action for violation of § 77e as to any of the moving Defendants.

5   *See Iqbal*, 129 S. Ct. at 1950.

6        The Motions to Dismiss are granted as to the twelfth cause of action for conversion.

7          **10.   California Civil Code § 2923.5**

8        The thirteenth cause of action in the First Amended Complaint alleges that Defendants

9   violated California Civil Code § 2923.5, which provides that "[a] mortgagee, trustee,

10  beneficiary, or authorized agent may not file a notice of default ... until 30 days after" the

11  "mortgagee, beneficiary, or authorized agent ... contact[s] the borrower in person or by

12  telephone in order to assess the borrower's financial situation and explore options for the

13  borrower to avoid foreclosure." Cal. Civ. Code § 2923.5(a)(1), (2). "There is nothing in

14  section 2923.5 that requires the lender to rewrite or modify the loan." *Mabry v. Superior*

15  *Court*, 185 Cal. App. 4th 208, 214 (2010). "[T]he remedy for noncompliance is a simple

16  postponement of the foreclosure sale, nothing more." *Id*. If the foreclosure sale has already

17  occurred, there is no remedy and failure to comply with the statute does not cause a cloud on

18  the title. *See id*. at 235 ("There is nothing in section 2923.5 that even hints that noncompliance

19  with the statute would cause any cloud on title after an otherwise properly conducted

20  foreclosure sale.... [U]nder the plain language of section 2923.5, read in conjunction with

21  section 2924g, the *only* remedy provided is a postponement of the sale before it happens.")

22  (emphasis in original).

23       Based upon the allegations of the First Amended Complaint, the foreclosure sale has

24  occurred, and accordingly Civil Code § 2923.5 does not provide a remedy for Plaintiffs. The

25  Motions to Dismiss are granted as to the thirteenth cause of action for violation of California

26  Civil Code § 2923.5.

27         **11.   Quiet Title**

28       The fourteenth cause of action in the First Amended Complaint is a claim to quiet title.

"[A] mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee." *Miller v. Provost*, 26 Cal. App. 4th 1703, 1707 (1994). "The cloud upon [one's] title persists until the debt is paid." *Aguilar v. Bocci*, 39 Cal. App. 3d 475, 477 (1974). Accordingly, "[i]n order to allege a claim to quiet title, Plaintiff must allege tender or offer of tender of the amounts borrowed." *Ricon v. Recontrust Co.*, No. 09cv937, 2009 WL 2407396, at *6 (S.D. Cal. Aug. 4, 2009); *see Arnolds Mgmt. Corp. v. Eischen*, 158 Cal. App. 3d 575, 578 (1984); *Karlsen*, 15 Cal. App. 3d at 117-18.

As discussed above, Plaintiffs fail to adequately allege an ability to tender. *See Iqbal*, 129 S. Ct. at 1950. The Motions to Dismiss are granted as to the fourteenth cause of action for quiet title.

### 12.    Injunctive Relief and Rescission

The moving Defendants move for the dismissal of the fifteenth cause of action for injunctive relief and the sixteenth cause of action for rescission on the basis that they are remedies and not a causes of action.

Under California law, injunctive relief "is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted." *Shell Oil Co. v. Richter*, 52 Cal. App. 2d 164, 168 (1942) (citation omitted); *see also Vissuet v. Indymac Mortg. Servs.*, No. 09cv2321, 2010 WL 1031013, at *7 (S.D. Cal. Mar. 19, 2010) (same); *Jozinovich v. JP Morgan Chase Bank, N.A.*, No. C-09-3326, 2010 WL 234895, at *7 (N.D. Cal. Jan. 14, 2010) ("Rescission is not an independent cause of action, but rather a remedy.").

The Motions to Dismiss are granted as to the fifteenth cause of action for injunctive relief and the sixteenth cause of action for rescission.

### 13.    Accounting

The moving Defendants move for the dismissal of the seventeenth cause of action for an accounting on the basis that it is not adequately pled because "Plaintiffs do not allege that there is a balance due to Plaintiffs on the underlying loan." (ECF No. 100 at 30).

Under California law, an accounting is generally a remedy under equity. *See Batt v. City & County of San Francisco*, 155 Cal. App. 4th 65, 82 (2007). In certain cases, an

accounting can be a cause of action.  "A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting." *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009) (citations omitted).

Plaintiffs fails to allege that "some balance is due the plaintiff." *Id*.  Accordingly, Plaintiffs have failed to allege an essential element of a cause of action for an accounting.  The Motions to Dismiss are granted as to the seventeenth cause of action for an accounting.

### 14.    California Business and Professions Code § 17200

The ninth cause of action in the First Amended Complaint alleges violation of California Business and Professions Code § 17200.

The moving Defendants first move to dismiss this cause of action on the basis that "unfair practices under Section 17200 applies to ongoing conduct, and relief is not available to remedy past conduct.  Because Plaintiffs' allegations with this cause of action refer to past conduct by parties other than Defendants, they do not meet the requirement set forth in Section 17200."  (ECF No. 100 at 23 (citing *Mangini v. Aerojet-General Corp.*, 230 Cal. App. 3d 1125, 1155-56 (1991)).  This contention relies on a prior version of the unfair competition statute.  In 1992, the California legislature amended § 17200 to expand the definition of unfair competition to include "any unlawful, unfair or fraudulent business *act* or practice."  Cal. Bus. & Prof. Code § 17200 (emphasis added).  The California Supreme Court has interpreted the 1992 amendment as overruling prior court precedent that required an ongoing pattern of conduct.  *See Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 570 (1998).  "[U]nder the current version of the statute, even a single act may create liability."  *United Farm Workers of Am., AFL-CIO v. Dutra Farms*, 83 Cal. App. 4th 1146, 1163 (2000); *see also CRST Van Expedited, Inc. v. Werner Enter., Inc.*, 479 F.3d 1099, 1107 (2007) ("A business act or practice need not be an ongoing pattern of conduct.").

The moving Defendants also contend that "this cause of action does not indicate that Plaintiffs have *actually* been damaged by the alleged conduct."  (ECF No. 100 at 23-24 (emphasis in original)).  The Court finds that the First Amended Complaint adequately alleges

1  that Plaintiffs have been damaged by the alleged conduct of Defendants.  (ECF No. 90 at 16-
2  17, 36).

3        California Business and Professions Code § 17200 "borrows violations of other laws
4  and treats" them as unlawful business practices "independently actionable under section
5  17200." *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992) (quotation omitted).
6  "Violation of almost any federal, state, or local law may serve as the basis for a[n] [unfair
7  competition] claim." *Plascencia v. Lending 1st Mortg.*, 583 F. Supp. 2d 1090, 1098 (N.D. Cal.
8  2008) (citing *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994)).  The Court
9  has found that the Motion to Dismiss should be denied as to the intentional misrepresentation,
10  negligent misrepresentation, and promissory estoppel claims against Select Portfolio Servicing.
11  To the extent Plaintiffs' § 17200 claim is predicated on the intentional misrepresentation,
12  negligent misrepresentation, and promissory estoppel claims against Select Portfolio Servicing,
13  the Motion to Dismiss Plaintiffs' § 17200 claim against Select Portfolio Servicing is denied.
14  Otherwise, the Motions to Dismiss are granted as to Plaintiffs' § 17200 claim.

15  **III.    Conclusion**

16        IT IS HEREBY ORDERED that the Motion to Dismiss filed by Lender Processing
17  Services, Inc. (ECF No. 97) is GRANTED, and the Motion to Dismiss filed by U.S. Bank
18  National Association, Credit Suisse Financial Corporation, Select Portfolio Servicing, and
19  Mortgage Electronic Registration Systems (ECF No. 100) is GRANTED in part and DENIED
20  in part, as discussed above.  All claims against Lender Processing Services, Inc., U.S. Bank
21  National Association, Credit Suisse Financial Corporation, and Mortgage Electronic
22  Registration Systems are dismissed without prejudice.  All claims against Select Portfolio
23  Servicing are dismissed without prejudice, except the intentional misrepresentation, negligent
24  misrepresentation, promissory estoppel, and § 17200 claims.  The moving Defendants' request
25  for an award of attorneys' fees and costs is denied.

26  DATED:  September 13, 2011

27

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge

28